

## IN THE UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT SCHAEFER, on behalf of himself and others similarly situated | ) ) ) | |
| Plaintiffs, | ) | Civil Action No. 10 CV 6366 |
| | ) | |
| v. | ) | Hon. Charles R. Norgle |
| | ) | |
| WALKER BROS. ENTERPRISES, INC., et al., | ) ) | |
| | ) | |
| Defendants. | ) | |

### OPINION AND ORDER

Lead Plaintiff Robert Schaefer ("Lead Plaintiff") was a restaurant server formerly employed by Defendants Walker Bros. Enterprises, Inc., Walker Bros. Highland Park, Inc., Walker Food Services, Inc., Walker Bros. Lake Zurich, Inc., Walker Bros. Lincolnshire, Inc., and Walker Bros. West, Inc. (collectively, "Defendants"). Lead Plaintiff filed this class action lawsuit on behalf of himself and other similarly situated wait staff (collectively, "Plaintiffs"), alleging that Defendants violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and the Illinois Minimum Wage Law ("IMWL"), 820 Ill. Comp. Stat. 105 § 1, *et seq.* Before the Court is Defendants' motion for summary judgment. For the following reasons, the motion is granted.

### I. BACKGROUND

#### A. Facts[1]

Defendants own six restaurants in the suburbs of Chicago that operate under the name "The Original® Pancake House." Defendants currently employ 123 men and women as restaurant servers. Since 2007, Defendants have employed over 500 people as servers. Lead

---

[1] The Court takes the undisputed facts from the parties' Local Rule 56.1 statements and notes disputed facts, if any, within the text.

Plaintiff worked primarily at Defendants' Wilmette and Glenview locations between November 2005 and August 2009, and also briefly worked at the Highland Park location in 2006.

Defendants provide servers with an employee handbook when they are hired. The handbook explains how Defendants apply a tip credit reducing servers' hourly wages by forty percent below minimum wage. In all six of their restaurants, Defendants display posters explaining the tip credit in well-traveled locations. These posters are approved by the United States Department of Labor ("DOL") and the Illinois Department of Labor. Lead Plaintiff "knew throughout his tenure that he would be paid part of his wages in tips." Pls.' Local Rule 56.1(b)(3)(B) Resp. to Defs.' Statement of Material Facts ¶ 35. However, the parties dispute whether the servers were properly informed of the tip credit.

Defendants apply the tip credit because servers receive additional monetary tips from customers as part of their primary duty of serving tables. The primary duty of these servers is to "'serve' their customers by responding to the customers' needs, such as by delivering drinks, dishes, condiments, garnish, and other items that customers request." Id. ¶ 15.

Defendants also have a general policy of assigning side work to servers in addition to their primary duty. Managers at Defendants' restaurants divide the side work amongst servers by assigning the servers to "stations." The managers rotate these station assignments between all of the servers. The type of side work that servers are assigned to varies depending on many factors such as the location at which they work, what shift they are assigned to work, how busy the restaurant is when they work, how many servers are working on the given day, and the operational decisions of their managers. The servers are typically assigned to one or fewer stations per shift. It is undisputed that the servers did not perform maintenance or janitorial work,

2

such as cleaning bathrooms, washing dishes, mopping or vacuuming floors, washing windows, or taking out garbage.

## B. Procedural History

Lead Plaintiff and Nicolas Flax ("Flax") initiated this case against Defendants on October 5, 2010. Plaintiffs allege that Defendants violated federal and state labor laws in two ways: (1) Defendants incorrectly used a tip credit to pay Plaintiffs an hourly rate less than minimum wage while requiring Plaintiffs to perform duties outside of their tipped occupation; and (2) Defendants failed to properly inform Plaintiffs of their intent to apply the tip credit to Plaintiffs' wages. On July 11, 2011, Lead Plaintiff filed an Amended Complaint removing Flax as a class representative. The Court then granted class certification for "All persons employed by Defendants as Servers from October 5, 2007, to the conclusion of this action, who were paid a sub-minimum, tip credit wage rate, and who performed duties unrelated to their tipped occupation, for which they were not paid minimum wage." Order, Sept. 19, 2013 [ECF No. 123]. Defendants now move for summary judgment, arguing that federal and state labor laws allow them to pay Plaintiffs less than minimum wage because the side work duties are related to servers' tipped occupation and they followed federal and state law to properly inform Plaintiffs of the tip credit. The motion is fully briefed and before the Court.

## II. DISCUSSION

### A. Standard of Decision

"Summary judgment is appropriate when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Northfield Ins. Co. v. City of Waukegan, 701 F.3d 1124, 1128 (7th Cir. 2012) (quoting Fed. R. Civ. P. 56(a)); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The court views the

evidence and draws all reasonable inferences in the light most favorable to the nonmoving party. Wells v. Coker, 707 F.3d 756, 760 (7th Cir. 2013). However, "[o]nce a party has made a properly supported motion for summary judgment, the nonmoving party may not simply rest upon the pleadings but must instead submit evidentiary materials that 'set forth specific facts showing that there is a genuine issue for trial.'" Siegel v. Shell Oil Co., 612 F.3d 932, 937 (7th Cir. 2010) (quoting Fed.R.Civ.P. 56(e)). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Wells, 707 F.3d at 760 (internal quotation marks and citation omitted). Said another way, "[s]ummary judgment is appropriate if the nonmoving party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Majors v. Gen. Elec. Co., 714 F.3d 527, 532 (7th Cir. 2013) (quoting Celotex Corp., 477 U.S. at 322).

## B. Plaintiffs' Claim for Unpaid Wages

Plaintiffs contend that because Defendants required them to perform non-tipped work, such as food preparation, they should have been paid at least minimum wage during the time spent on these tasks. Plaintiffs seek their unpaid minimum wages, plus penalties, interest, attorneys' fees, and the costs of this lawsuit.

Under the FLSA, "'an employee who brings suit…for unpaid minimum wages…has the burden of proving that he performed work for which he was not properly compensated.'" Driver v. AppleIllinois, LLC, 890 F. Supp. 2d 1008, 1028 (N.D. Ill. 2012) (quoting Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 686-87 (1946)). The FLSA allows employers to pay tipped employees a wage below the federally mandated minimum wage rate, so long as the inclusion of the employees' tips meets or exceeds the current federal minimum wage of $7.25 per hour. See

4

29 U.S.C. § 203(m); 29 U.S.C. § 206(a)(1). The IMWL mirrors the federal statute, and the same

analysis is generally applied to both statutes. 820 Ill. Comp. Stat. § 105/4(c); see also Driver, 890

F.Supp.2d at 1011 (citing Condo v. SyscoCorp., 1 F.3d 599, 601 n. 3 (7th Cir. 1993)). This

allowance is commonly referred to as a "tip credit." Employers, however, can take the tip credit

"only for hours worked by the employee in an occupation in which the employee qualifies as a

'tipped employee.'" 29 C.F.R. § 531.59(b). So when "an employee is employed in a dual job,"

for example when "a maintenance man in a hotel also serves as a waiter," employers cannot take

advantage of the tip credit when the employee performs tasks unrelated to his tipped occupation.

29 C.F.R. § 531.56(e).

On the other hand, when employees perform "related duties" to their tipped occupations,

employers may apply the tip credit and continue to pay employees below minimum wage. Id. For

example, a "waitress who spends part of her time cleaning and setting tables, toasting bread,

making coffee and occasionally washing dishes or glasses" may be paid less than minimum wage

for these related duties which might "not by themselves be directed toward producing tips." Id.

The regulation itself does not define "related duties," but the DOL further interpreted the

regulation in its Field Operations Handbook. The Handbook explains that:

> Reg 531.56(e) permits the taking of the tip credit for time spent in duties related
> to the tipped occupation…provided such duties are incidental to the regular duties
> of the server (waiter/waitress) and are generally assigned to the servers. However,
> where the facts indicate that specific employees are routinely assigned to
> maintenance, or that tipped employees spend a substantial amount of time (in
> excess of 20 percent) performing general preparation work maintenance, no tip
> credit may be taken for the time spent in such duties.

U.S. Dept. of Labor Field Operations Handbook Ch. 30d00(e) (June 30, 2000), available at

http://www.dol.gov/whd/FOH/FOH_Ch30.pdf (last visited Dec. 9, 2014). Courts give deference

to the agency's interpretation. Driver v. AppleIllinois, LLC, 739 F.3d 1073, 1075 (7th Cir. 2014)

5

(citing Fast v. Applebee's Intern., Inc., 638 F.3d 872, 877 (8th Cir. 2011)). And, "the Handbook's interpretation of § 531.56(e) governs this case." Fast, 638 F.3d at 881.

Plaintiffs do not contend that they spent over twenty percent of their workdays performing side work. Therefore, to succeed on their claim for unpaid wages, Plaintiffs bear the burden of showing that Defendants assigned side work to Plaintiffs that was unrelated to their tipped occupation of serving tables. Driver, 890 F. Supp. 2d at 1028. Plaintiffs argue that side work includes food preparation and "back-of-the-house" responsibilities that would typically be performed by a cook, expediter or janitor at the minimum wage rate or above and is therefore unrelated to their tipped occupation. In contrast, Defendants argue that the required side work is related to the servers' primary duty of waiting tables.

Defendants assign all servers to stations according to their shift—morning, midday, or evening. The stations divide the side work amongst the servers and each station requires different specific tasks to be completed. For example, during the morning shift, Station 3 is responsible for "Soup and Blueberry Warmers; Ice Cream," Section 4 is responsible for "Breads; Jellies," and Station 5 is responsible for "Sour cream, Applesauce, Salsa, Lemons, Powdered sugar; Shelf above the jellies." Class Mot. to Supplement the Record on Defs.' Mot. for Summ. J., Attachment A, Ex. 2 at p. 20. Although Defendants customize the side work lists to suit the operations of the individual restaurants, the duties described in the side work lists align with the duties described by Defendants' employees.

Kevin Donoghue ("Donoghue"), the Human Resources Manager for all six restaurant locations, testified about the side work he had seen employees performing at Defendants' restaurants. Donoghue testified that prior to May of 2011, servers sliced produce on a regular basis. This produce included things like strawberries and mushrooms. After May of 2011,

Defendants reduced the amount of produce that servers had to cut. He usually saw servers conduct simple tasks, such as, placing a scoop of ice cream on customers' waffle orders, because cooks were responsible for more time consuming or complicated food preparation. For example, cooks would make blueberry compote by heating sugar in blueberry juice, and the servers would stir blueberries into the compote prior to serving it. Donoghue's recollection of what he saw servers doing is consistent with affidavits submitted by fourteen of Defendants' current or past servers who are class members.

The fourteen affiants described their work schedules, the types of activities they performed at work, the time spent on said activities, and their compensation. All but one of the affidavits are dated and signed before May of 2011, so the servers' statements would include the increased workload of slicing all produce described by Donoghue before that date. A server at Defendants' Wilmette location named Jorge Esquival, for example, stated that he helped to "set tables...slice fruit, refill jelly trays, restock bread, and slice lemons, among other tasks." Pls.' Local Rule 56.1(b)(3)(B) Resp. to Defs.' Statement of Material Facts, Ex. 3 at p. 24. Whereas, a server at Defendants' Lincolnshire location named Shela Santiago said on a morning shift she would "open the coffee pots, put water in the soup warmer, brew iced tea, take jellies from the refrigerator, and put napkins and silverware on tables in Room #1." Id., Ex. 3 at p. 36. The servers performed the side work predominantly at the beginning or end of their shifts, but had to replenish and restock certain items based on the quantity of customers' orders throughout the day. The servers reiterated that the assigned side work varied by individual, but the tasks fell within those enumerated in the side work lists.

Lead Plaintiff testified about the side work Defendants assigned him to complete. He stated that over the course of his employment, he refilled condiments; he cut produce; he mixed

7

lingonberry jam, sour cream, and apple sauce; he added garnishments to customers' plates; he restocked items such as butter, jams, and jellies; he dismantled and cleaned the hot chocolate and lemonade machines; and he occasionally dusted or polished brass in the front of the restaurant. Lead Plaintiff's side work assignments are consistent with the types of duties assigned to the other servers.

Defendants argue that this case is distinguishable from Driver v. AppleIllinois, LLC, 890 F. Supp. 2d 1008 (N.D. Ill. 2012). In Driver, employees of the defendant submitted declarations stating that they were assigned to "cleaning bathrooms including toilets, sinks, mirrors and urinals; wiping down walls; polishing paneling with Pledge or lemon oil; mopping or scrubbing floors; and loading dishwashers" as well as "washing windows; cleaning chandeliers; picking up trash in the parking lot; taking out garbage; restocking bathrooms; and dumping and refilling the 'sani' bucket." Id. at 1031-32. There was also evidence that the defendant instituted a corporate objective to use servers to "do the cleaning that would otherwise be done by a contracted service." Id. at 1031. The court denied the defendant's summary judgment motion and ruled in favor of plaintiffs because the evidence showed that the defendant regularly assigned servers to extensive janitorial duties unrelated to their tipped occupation and that the defendant required its servers to perform this side work in excess of twenty percent of their shifts. Id. at 1037.

The Court agrees that the evidence in Driver is in stark contrast to this case. Here, Plaintiffs admit that they "do not clean bathrooms," "do not wash dishes," "do not clean chandeliers," "do not mop, vacuum, or scrub floors," "do not wash windows or window blinds," "do not scrub walls," "do not pick up trash in the parking lot," "do not take out garbage," and "do not roll silverware." Pls.' Local Rule 56.1(b)(3)(B) Resp. to Defs.' Statement of Material

8

Facts ¶¶ 19-27, 29. Plaintiffs were not subjected to extensive cleaning duties like the plaintiffs in Driver.

It is undisputed that Plaintiffs' tipped occupations and primary duty is to "'serve' their customers by responding to the customers' needs, such as by delivering drinks, dishes, condiments, garnish, and other items that customers request." Id. ¶ 15. Even viewed in a light most favorable to Plaintiffs, the side work tasks performed by the restaurant servers are "incidental to the regular duties of the server (waiter/waitress) and are generally assigned to the servers"; falling within the DOL Handbook's interpretation of § 531.56(e). Field Operations Handbook Ch. 30d00(e). There is no indication that Plaintiffs were "routinely assigned to maintenance." Id. And, "where the related duties are performed intermittently and as part of the primary occupation," such as the duties are here, "the duties are subject to the tip credit." Fast, 638 F.3d at 880. Thus, the Court finds that summary judgment in favor of Defendants is appropriate on this claim.

**C. Plaintiff's Claim for Insufficient Notice of the Tip Credit Provisions**

Next, Plaintiffs allege that they were not given proper notice of the tip credit provisions. To take advantage of the tip credit, employers must notify their employees of their intent to do so beforehand. See 29 U.S.C. § 203(m); 29 C.F.R. § 531.59; 820 Ill. Comp. Stat. § 105/9.

### 1. Whether Defendants Provided Adequate Notice of Their Intent to Take the Tip Credit under the IMWL

The IMWL requires employers to have an approved summary of the Act "posted in a conspicuous and accessible place in or about the premises." 820 Ill. Comp. Stat. § 105/9. Plaintiffs admit that "Defendants display posters approved by the Illinois Department of Labor and the United States Department of Labor in well-traveled locations in their restaurants." Pls.' Local Rule 56.1(b)(3)(B) Resp. to Defs.' Statement of Material Facts ¶ 10. This posting is all

9

that is required to comply with the IMWL. <u>Driver v. AppleIllinois, LLC</u>, 917 F. Supp. 2d 793, 800 (N.D. Ill. 2013). Therefore, Defendants are entitled to summary judgment on Plaintiffs' claim that they violated the notice provision of the IMWL.

### 2. Whether Defendants Provided Adequate Notice of Their Intent to Take the Tip Credit under the FLSA

The FLSA requires more action from employers than the IMWL. The FLSA "requires the employer to inform the employee 'of the provisions of this subsection.'" <u>Driver</u>, 917 F.Supp.2d at 801 (citing 29 U.S.C. §203(m)). Simply posting a DOL approved poster advising employees about the tip credit is not enough. <u>Id.</u> "[A]n employer must provide notice to the employees, but need not necessarily 'explain' the tip credit." <u>Kilgore v. Outback Steakhouse of Fla., Inc.</u>, 160 F.3d 294, 298 (6th Cir. 1998); <u>see also</u> <u>Dominguez v. Quigley's Ir. Pub, Inc.</u>, 790 F.Supp.2d 803, 822 (N.D. Ill. 2011). In some instances, "providing employees with written materials describing the employer's tip policy" may suffice. <u>Dominguez</u>, 790 F.Supp.2d at 822 (citing <u>Kilgore</u>, 160 F.3d at 298-99).

Here, Defendants state that they informed the servers of the tip credit in multiple ways: (1) they gave the servers an employee handbook, which contained information regarding the tip credit; (2) they had servers sign a "Server Uniform and Tip Credit Agreement"; (3) they informed servers about the tip credit during training and orientation; (4) and they displayed posters describing the tip credit. Lead Plaintiff admits that he read Defendants' employee handbook. He also admits that Defendants displayed posters discussing the tip credit and that he knew he "would be paid part of [his] salary in tips." Pls.' Local Rule 56.1(b)(3)(B) Resp. to Defs.' Statement of Material Facts ¶ 12. Other servers testified that the tip credit was explained to them during training or otherwise. Lead Plaintiff's assertion that he was not given adequate notice is not supported by the evidence.

The undisputed facts and evidence show that Defendants adequately informed their servers, including Lead Plaintiff, of the tip credit provisions. Lead Plaintiff's mere assertion to the contrary does not create a genuine issue of fact. Siegel, 612 F.3d at 937. Therefore, Defendants are entitled to summary judgment regarding the notice provision of the FLSA.

### III. Conclusion

For the foregoing reasons, summary judgment is granted in favor of Defendants on Plaintiffs' IMWL (Count I) and FLSA (Count II) claims.

IT IS SO ORDERED.

ENTER:

_____
CHARLES RONALD NORGLE, Judge
United States District Court

DATE: December 17, 2014

11